Our next case, Pocono Mountain Charter School v. Pocono Mountain School District at Alcoa. Pocono Mountain School District at Alcoa. May it please the court, my name is Judith Graham. I represent Conchita Jackson and the families of the Pocono Mountain Charter School students. And I'm arguing on behalf of all appellants. So you represent the school also? No, I do not represent the school. I represent the families. Is this a threshold question? First, have you reserved time for rebuttal? With the court's permission, I'd like to reserve three minutes. Is this a class action? Is it intended as a class action? Because the first paragraph, I think, of the complaint refers to on behalf of a class of students in the school. And I was curious as to just how the parties were proceeding here. Although I realize we had this after the grant of a motion to dismiss the certification procedure. We did follow it as a class action and we believe it meets the requirements of a class action for the families. But as your Honor said, the court never reached that question because it dismissed the case on a motion to dismiss. Why is counsel for the school not here? Do you know? I'm just curious. Because the individuals are not named in all the counts. I think the individual students are in the due process, but I'm just curious. That's in part why I asked the question about what is envisioned by how this case proceeds. Because obviously, for purposes of the analysis and for purposes of the analysis used by the district court, it matters a great deal here who the plaintiff party is or was. Whether we're talking about an entity called the charter school, whether we're talking about parents, whether we're talking about students who are pursuing civil rights interests. Yes, I agree. Counsel for the charter school were not available when we received notice that there actually would be oral argument in this case. So they asked me to... So it was inconvenient? We send out availability notices and alert people and ask them about their availability. Because it's a very different argument, the school versus the students. I recognize that, Your Honor. I can't speak for my fellow counsel. Except you are speaking for your fellow counsel. All right, well, we'll hear oral argument. It's an important case and I'm just not... Well, why don't we hear it and then we'll decide. Let me ask a preliminary question. This is an important issue. I mean, it impacts all the charter schools across the Commonwealth as to whether they can sue. Yes. Clearly they can only be sued to the extent of a political subdivision, but that's not the issue. The issue is the extent to which they can sue. And there doesn't seem to be a lot of law. There isn't any law really on it. There isn't any law. Why should we not certify this to the Pennsylvania Supreme Court for them to decide the status of charter schools in the Commonwealth? And how to read this statute? I believe, Your Honor, that for purposes of deciding whether the plaintiffs can bring action under Section 1983 and Title VI of the Civil Rights Act, you can decide that issue as a federal question. So you think it doesn't matter whether the district court was correct that the charter school is itself a political subdivision in terms of whether or not it can sue under the civil rights law? I think it is important, Your Honor, but I think this court can decide. I'm asking you this without having to say it. Does it matter for purposes of whether or not the charter school, qua charter school, may sue under the civil rights law, whether it's a political subdivision or not, or whether it's a corporate entity? Well, those are two different questions. No, it's one question, but it's a question that depends upon whether it's one or the other. Right. I see. Yes, I think it does matter, but I think, first of all, that it's clear from Pennsylvania law. There is nothing in Pennsylvania law in the statutory definitions of a political subdivision. Is there anything in the statute that suggests that a charter school is itself a political subdivision? No. In fact, it calls it a corporate entity, doesn't it? It calls it a corporate entity. Well, and when it says it can be sued but only to the extent of a political subdivision, it's saying it isn't one. Exactly. It's like if you treat me as a member, you're treating me as a member. It's clear that I'm not a member. Exactly. In fact, why shouldn't that be taken on its face, on the plain text, to suggest that what the legislature wanted to do here was to give to this corporate entity, which is not a political subdivision, some of the same benefits that a political subdivision endures, at least, treatment under the Political Subdivision to Oppose Act? Yes, exactly.  The intent of the district court and the defendants rely totally on Section 1714 of the charter school law, which contains that provision that you can sue or be sued to the same extent that a political subdivision can be sued. But that is just a procedural device that allows the same provisions in the Rules of Civil Procedure to apply. Isn't that a real problem here? We don't know how to construe that. We don't know how to construe that provision. Because on the one hand, I would say it says can be sued, so it's referring to be sued, not sue. And if the legislature meant to make the charter school's ability to sue and be sued to be in lockstep with a political subdivision, they should have said that the charter school can only sue and be sued to the same extent as a political subdivision. But it doesn't say that. That issue needs to be decided. And how are we to decide that? Why are we to decide that as a federal court when this is a matter that's very important to Pennsylvania jurisprudence? And Pennsylvania courts, the Warner case and the Zegarra case, they have reasoned through what charter schools are. And they've shown extra competence in that. We probably shouldn't be deciding that for Pennsylvania, should we? Well, I think you should. Well, you want us to, but I don't think we should. Well, first of all, there is a very clear definition of a political subdivision in Pennsylvania law, in the Pennsylvania code. One Pennsylvania consolidated statute. But that's not the issue. The issue is whether the words can sue in the statute is to be limited as a political subdivision. The way the statute has clearly said can be sued is limited. Well, it actually says a political subdivision or a local agency. Can be sued. Yes. But a local agency is very different from a political subdivision. Arguably, a charter school is a local agency. It's a local education agency for purposes of the Individuals with Disabilities Education Act, for example. Do you understand my point? We don't know whether the word sue is to be limited the same way can be sued is clearly limited. Do you understand my point? I understand your point. That's the starting point of this whole thing. And to my mind, using normal construction principles, I would say that had Congress wanted, well, this is your argument. I mean, the state legislature wanted to make it a blanket provision that with respect to suing and being sued, these schools are just like political subdivisions, they could have said that. And they didn't. The next question is, if we say that the charter school can sue, can they sue the political entity that created it for a federal claim? Yes. That is really the central question, I believe. And that raises the issue of did, in fact, the school district create the charter school? It did not. The charter school was created by the organization. Who grants the charter? In Pennsylvania, the school district, the local school district in which the charter school is located, serves as the sponsoring entity and grants the charter. But it is not a free agent in granting the charter. The rationale for the principle that political subdivisions cannot sue the state, which is what the district court assumed that was the principle that it based its decision on, that's what the defendants argued throughout their brief. But the basis for that, which was set forth in the Supreme Court decision in Trenton v. New Jersey, is that the entity only exists as a creature of the state. The state can create it. The state can demolish it. It has no privileges and immunities because it's totally a creature of the state. That's not the case with the charter school. And there's ample precedent from other jurisdictions that charter schools should be treated differently. And that even if a charter school... I'm not sure I understand your point. Clearly the charter school is an entity created by the state and or created by a political subdivision of the state. It's chartered by the state, but it is not created by the state. It doesn't come into being. It's not created by the federal government. It's created by... It's purely a creature of state law. It can be created by parents, teachers, private nonprofit corporations, public nonprofit corporations. Can a public school sue the state? We know under Washington v. Seattle School District. Can they not? Can you reconcile Washington v. Seattle School District with Williams and Coleman? I'm not familiar with Williams and Coleman. They are the cases that say that a political subdivision cannot sue its political creator for a federal law violation, which is what the charter school is doing here, which Washington v. Seattle School District says, can sue the state of Washington for depriving students of... minority students of an equal right to educational services. So how do you reconcile those two lines of cases? Well, first of all, whether a charter school is a political subdivision is a matter of state law. We're getting right back to that. Exactly. It's going to be different in Washington. It's going to be different there. And in Pennsylvania, a political subdivision is a county, city, borough, incorporated town, township, school district, vocational school district, and county institutional district. Why would it be an authority? A local authority. It could be a local authority, in which case it would not be a political subdivision. Remember the point we're making, though. We're not saying it is a political subdivision. We're saying under the statute, its rights are limited to the same extent as a political subdivision. So we don't have to equate it to a political subdivision. But under Washington v. Seattle School District, the Supreme Court has said, okay, even if it is a school district, it can sue the state. I mean, isn't that the position you want to... Correct. Yes, absolutely. We've cited the cases in our brief in Pennsylvania in which school districts have sued the state. But... I'm talking about the right to bring a federal law violation claim by a political subdivision against the government entity which creates it. More than just the right to sue, but the right, having the right to sue, the right to bring a federal claim. Well, I would draw the court's attention to the Kavanaugh case from the Ninth Circuit, Kavanaugh v. Horizon Community Learning Center, which held that even though under Arizona law, the Arizona Attorney General had held that a charter school is a political subdivision, the Ninth Circuit held that a charter school may be a state actor for some purposes but not for others. And I would argue that the act of withdrawing the charter from the charter school, that is saying you are no longer, you can no longer exist as a charter school, is the type of action that would take the charter school out of any principles governing political subdivisions for that purpose alone. Okay, I'm not asking about that level. I'm asking about even if you say it is a political subdivision, can it not sue? Absolutely, Your Honor, it can. For a federal law question? Absolutely, Your Honor. Williams and Coleman says it can't. Well, there is case law in Pennsylvania. I'm not talking about Pennsylvania. That's okay. I think we'll hear from you on rebuttal. Okay, thank you. My name is John Freund. I represent Broken Mountain School District and the various individual defendants who have been named in this case. And I must say that this is somewhat unusual in my 33 years of experience. I've come prepared to argue against one problem and found out I'm arguing against another. Well, you're arguing against one instead of two, so maybe you've got the better part of the deal. Well, let me say that our primary argument certainly reflects the question of the capacity of the ability of the school to sue as a school. But it's at bottom an issue of statutory construction. We're looking at the terminology in the charter school law that says a charter school can sue and be sued, but only to the extent a political subdivision can be sued. And my question is, why should I not decide, as a matter of statutory interpretation, that had the state legislature wanted the charter school's ability to bring legal action as well as to be a defendant in legal action to be limited as or to be the same as a political subdivision, why did they not say a charter school can only sue and be sued to the same extent as a political subdivision? Well, once again, Your Honor, the Pennsylvania legislature's lack of grammatical accuracy has given us a reason to make a living. However... Well, but we make a living by deciding how, if they wanted to say it a certain way, why they wouldn't say it. Or, add the language, sue and be sued at the end. We can't ignore the fact that that word isn't in there. I understand that, Your Honor. However, I think that there's also a separate question here that can be adjudicated by this court, and that is whether or not this state created an entity. And by the way, our position is that whether you call this a political subdivision or whatever you call it is really of no moment in time. All right, good. I was getting to that, because we are dealing with a limited record and grant of a motion to dismiss an opinion from the district court which says that a charter school is a political subdivision. And as far as my reading takes me, I see that as pretty much nothing but ifs and ifsits, because there is a reference then, after that declaration, Section 1983, and a citation to some federal cases, but I see no analysis on why one can look at this statute and read that a charter school is a political subdivision. So you're indicating that it doesn't matter when you go as far as to say that the district court was wrong. No. Well, it would have to be wrong, because the statute doesn't say it is. The statute says it will be treated as, which to my mind says, well, then it isn't. Your Honor, for the matters that are raised in the complaint, the matters which the district court was ruling on, I don't think that it matters, because the question before the district court was whether or not a state-created entity could utilize Section 1983 of the Civil Rights Act in order to enforce a claim violation and seek remedies for violation of people's protection in the 14th Amendment. And doesn't Washington v. Seattle School District say they can? I don't know, Your Honor. Well, you don't cite it in your brief, but isn't that... I mean, it's a crucial case where the Seattle School District sued the state of Washington under 1983, claiming that the state of Washington, by statute, was depriving the students, the minority students, of equal protection in providing education. And the line of cases which I think you are focusing on, Williams and Coleman, right, says that a political subdivision cannot sue for a federal law issue the political entity, the government entity that created it. But Washington v. Seattle School District is permitting just that. That's a Supreme Court decision after Coleman and Williams, and isn't that an analysis that we really, whether or not the Boca Mota Charter School is a political entity, don't we need to consider how to reconcile Washington v. Seattle School District with the Coleman and Williams line of cases? I can't speak to that, Your Honor. I think it would be helpful if we could get counsel to comment on Washington v. Seattle School District because it's doing exactly there what you are claiming. Right. Interestingly, not in the line of thinking of either counsel because it's not cited in the promise. It is in passing. It is in passing. It's not cited in your brief. But I think it's a case that has a crucial impact on the decision of this case, and I think we really need some further discussion. Although, even in Pennsylvania, school districts can sue under Section 213 of the Public School Code. What's that for federal? Across the board. They can sue the school districts as law school districts that do not have 14th Amendment rights. There's no right to be remedied under the section that's claimed here. Now, potentially an individual, if they could, like for example one of these parents, if in none of the circumstances, if they could show a real injury, which I don't think they've come close to in this case, could sue the cause of action. But nowhere am I familiar with a case in which a school district has sought to protect its own claimed 14th Amendment or legal protection rights as a school district. And that's what Washington v. Seattle School District does in fact do. I think it would be very helpful to us to have some discussion. All right, we may ask for a supplemental briefing. I think that would be fine. I think it's also important for the court to understand that with regard to the charter itself, that the actual revocation is limited.  It does not actually stop the school from operating. It's not before us. There is a concurrent administrative proceeding before the Department of Education. It's pending at this time. Your Honor, it's pending. It has not been heard before CAP. There was a revocation by the school board and it has not yet been heard by CAP. The school continues to operate. What's the relevance of that to the issue before us? I'd be just interested. No, but I mean that it still operates even if it's revoked. Well, with regard to the various claims that are made here, it shows that there's no injury. With regard to the standing issue of the individuals. I mean, nothing has occurred here that there's no direct injury. The district court didn't address the individual claims at all. It didn't address, and I think there's injunctive relief that could be obtained. It didn't consider the fact that injunctive relief under the Pennsylvania Constitution is available. I mean, the district court didn't consider a thing. How can we say that its analysis was what it should be, which is what you want us to do, presumably? Well, what we'd like you to do is move to certify and I would be happy to do it. Well, see what the state of the matter says. We are following up on Judge Rendell's question. Since we're not accomplishing, obviously, as much as we had hoped to, is it possible for us to whittle down some of the claims here? For example, the Pennsylvania Constitutional claims, it seems to me, exist only if there is an implied right of action to such claims under the Pennsylvania Constitution. And I'm not aware of any Pennsylvania jurisprudence that has recognized such a right. All right. So, again, in response to Judge Rendell's question, with respect at least to those claims, we ought to be able to dispose of those if you're correct. And the defamation claims as well. You know, all I've got to say about the defamation claims is really a New York Times versus Sullivan and the prospect of a public enemy. So it would be your position that if nothing else, the Pennsylvania Constitutional claims and the defamation claims should at least fall, irrespective of any questions we have on the other claims or the other parties, individuals versus judges. I agree. I'd be very happy to supplement with regard to the case raised by Judge Roth. Our law is that we found no other cases, and this circuit does not seem to address the issue directly as to whether or not local subdivision or state courts should consider another under the 14th Amendment. It was in section 19.3. In fairness, as Judge Roth has pointed out, she said that Washington versus Seattle really was discussed and mentioned only in passing. It indeed was. I think it gets at most A-C-E-G, Washington versus Seattle schools. So obviously neither side had made it a major pillar of their position. We'd be happy to do that if that's what the court directs. All right. We'll send a letter. There may be other aspects or other questions we want answered. This is a multifaceted case, for sure. And a very important one that needs careful consideration. With regard to the other claims and claims of the individuals, we'll do what the court can dispose of those. I think there's enough there in front of you. It seems to me that that is the sticking point, and until we address that matter, I think we're pressed on our brief for other points unless the court has additional questions. And also, again, it's somewhat an unusual situation with a counsel not appearing. The brief was submitted, but it didn't have a letter in it, so we're running the speed, actually. We had a bad week. We had a bad week. Yeah. So... You've got no respect. I thought once I heard... You can't get a letter. Yes. All right. Thank you. Thank you. Ms. Graham? Thank you. We would certainly welcome the opportunity for additional briefing also, Your Honor. With respect to the individual plaintiffs, the defendants argued throughout their brief that they have suffered no harm because no one has a right to attend a particular school. Actually, that's not true with respect to charter schools. The very purpose of a charter school is to offer the opportunity to attend a school of one's choice. Well, but it's a lottery system, so you don't really have a right the same way you have a right to attend a public school. Isn't that correct? In that sense, it's correct, Your Honor, but you have a right to at least be on a waiting list. But you don't have a right to attend the charter school of your choice. Well, at this point, the Pocono Mountain Charter School is under-enrolled. Because of the controversy about the litigation, it has vacancies. So parents can send their children to the charter school of their choice. But under what case would the students have a due process right here? What's your best authority for the proposition that there is, in fact, the kind of right that would support a due process claim? Well, the primary cause of action for the families is Title VI of the Civil Rights Act, that this is discrimination on the basis of race. I believe it is a right created by the charter school law that as long as there are vacancies, you can go there. The charter school cannot turn you away. And even if there are no vacancies and you don't win the lottery, you can keep coming back and applying until you do win the lottery. Well, the district court did address the Title VI claims against the individual, saying it was a failure to allege facts showing how the defendants discriminated against the individual students. And recalling the pleading, I would say that's correct.  What was stated in the complaint was that the discrimination is against the school as essentially a minority school, an African-American and Latino school, run by African-Americans and Latinos. But that doesn't give the students an individual Title VI claim that they themselves are discriminated against. But they are part of the discrimination. Their race is the cause of the discrimination. There were no acts of discrimination against them alleged. Well, shutting down their school is certainly discriminatory. We've addressed the issue also in our brief hearing. Should the individual be placed and given an opportunity to win the complaint? Absolutely. That should not have been dismissed without that opportunity. And we would request that if the court chooses to remand to the district court. There is authority that charter schools have standing to sue school districts and the state. I see that my time is up. But I would draw the court's attention to a recent case from the District of Minnesota Target and Seat Academy. Could you submit a 28-J letter giving us that site so opposing counsel also knows? Thank you. Thank you very much. And we will probably be sending a letter asking for supplemental briefing on these issues. Thank you. We're going to take a five-minute recess.